IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ACI PAYMENTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CONSERVICE, LLC, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR LEAVE TO AMEND** <br><br> Case No. 1:21-cv-00084-RJS-CMR <br><br> Chief District Judge Robert J. Shelby <br><br> Magistrate Judge Cecilia M. Romero |

Now before the court is ACI's Motion for Leave to Amend.[1]  For the reasons explained below, the Motion is GRANTED.

## BACKGROUND AND PROCEDURAL HISTORY

This case arises out of Defendant Conservice, LLC's use of Plaintiff ACI Payments, Inc.'s payment processing products, collectively referred to as "Speedpay."[2]  ACI alleges that Conservice uses Speedpay as part of Conservice's business of paying utility bills on behalf of customers, typically property owners and managers, generating a profit by using single-use credit cards with high interchange fees.[3]  ACI further alleges that in doing so, Conservice affirmatively accepts and violates the Speedpay Terms and Conditions, which prohibit using Speedpay for commercial purposes.[4]  ACI initiated this action in June 2021, bringing causes of action against Conservice for breach of contract, fraud, and violation of the Computer Fraud and Abuse Act

---

[1] Dkt. 35.

[2] Dkt. 35-2 (Proposed First Amended Complaint) ¶ 1.  ACI provides payment processing services to billers throughout the United States, including utility billers.  ACI's payment processing platforms include ACI Speedpay, Tran$Act, and V4.  *Id.* ¶ 8.

[3] *Id.* ¶¶ 12–17.

[4] *Id.* ¶¶ 9–12.

(CFAA).[5]  On July 19, 2021, Conservice filed a Motion to Dismiss.[6]  Oral argument was held on February 15, 2022.[7]

On March 3, 2022, the court issued a Memorandum Decision and Order granting in part and denying in part Conservice's Motion to Dismiss.[8]  The court found the breach of contract claim was adequately pleaded, but dismissed ACI's fraud claim, finding it was not pleaded with the specificity required by Federal Rule of Civil Procedure Rule 9(b).[9]  On April 1, 2022, ACI filed a Motion for Leave to File First Amended Complaint (Motion to Amend).[10]  In its Motion, ACI proposes a First Amended Complaint to "plead [the] specifics" of the alleged fraud.[11] Conservice opposes ACI's Motion, arguing amendment would be futile because "New York law prohibits fraud claims that are duplicative of contact claims," the "new allegations do not support the elements for fraudulent inducement," and ACI fails to plead justifiable reliance.[12]  For the reasons explained below, the court disagrees with Conservice and GRANTS ACI's Motion to Amend.

---

[5] *See* Dkt. 2 (Complaint).

[6] Dkt. 20 (Motion to Dismiss for Failure to State a Claim).

[7] Dkt. 30 (Minute Entry for Motion Hearing).

[8] Dkt. 31 (Memorandum Decision and Order Granting in Part and Denying in Part Motion to Dismiss).

[9] *Id.* at 11–17.  The court also dismissed ACI's claim under the Computer Fraud and Abuse Act.  *Id.* at 17–27.

[10] Dkt. 35 (Motion for Leave to File First Amended Complaint) (hereinafter Motion to Amend).

[11] *Id.* at 2–3.  ACI does not seek to replead its CFAA claim.  *See* Dkt. 35-2 (Proposed First Amended Complaint).

[12] Dkt. 36 (Defendant's Opposition to ACI's Motion for Leave to File First Amended Complaint) (hereinafter Opposition) at 2 (summarizing argument).

## LEGAL STANDARD

Federal Rule of Civil Procedure 15 states that leave to amend "should freely [be given] when justice so requires."[13]  Justice requires leave to amend "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief."[14]  "However, justice does not require leave to amend when amendment would be futile."[15]  An amendment is futile when the complaint, as amended, "would be subject to dismissal."[16]  Relevant here, a complaint is subject to dismissal under Rule 12(b)(6) when it "fail[s] to state a claim upon which relief can be granted."[17]  A complaint is not subject to dismissal when it "state[s] a claim for relief that is plausible on its face," namely, when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18]

## ANALYSIS

The court will first assess whether ACI pleads fraud with the particularity required by Federal Rule of Civil Procedure Rule 9(b), and next analyze whether ACI adequately states a claim for common law fraud.

### I.   ACI Pleads Fraud with Particularity

Under Rule 9(b), "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud."[19]  The Tenth Circuit has explained that, pursuant to this Rule, a party must "identify the time, place, content, and consequences of fraudulent conduct," or more

---

[13] Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

[14] *Foman*, 371 U.S. at 182.

[15] *Prisbry v. Barnes*, No. 2:17-cv-00723-DN-PMW, 2018 WL 1508559, at *3 (D. Utah Mar. 27, 2018) (citing *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571 (10th Cir. 1993)).

[16] *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Invs. Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

[17] Fed. R. Civ. P. 12(b)(6).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).

[19] Fed. R. Civ. P. 9(b).

plainly, "plead the who, what, when, where, and how of the alleged [fraud]."[20]  The court previously dismissed ACI's fraud claim for falling short of the Rule 9(b) standard.[21]  In its initial Complaint, ACI had only generally pleaded the "who" (Conservice), the "what" (using Speedpay in violation of the Terms and Conditions), the "how" (accessing Speedpay via websites and clicking "yes" next to the Terms and Conditions) the "when" (between 2018 and 2020), and the consequences (at least $5 million in damages from processing Conservice payments).[22]  However, the court concluded ACI did not identify with sufficient Rule 9(b) particularity the "who" (customers Conservice was acting on behalf of, or the billers being paid), the "where" (which websites were accessed and from where), or the "when" (particular dates Conservice accessed Speedpay).[23]

ACI's proposed First Amended Complaint retains all original allegations and adds more specific allegations by incorporating an exhibit listing dozens of specific payments made by Conservice via Speedpay on behalf of specific customers, to specific billers, on particular dates, and through named websites.[24]  ACI has now particularly identified the time, place, content, and consequences of Conservice's alleged fraudulent conduct.  This is sufficient to meet the Rule 9(b) standard.

---

[20] *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010) (internal citations and quotations omitted).

[21] Dkt. 31 (Memorandum Decision and Order) at 14–17.

[22] *Id.* at 16.

[23] *Id.*

[24] *See* Dkt. 35-1 (Exhibit 1: Transaction Details); Dkt. 35-2 (Proposed First Amended Complaint) ¶¶ 27–28 (incorporating Exhibit 1).

## II.     ACI Adequately Pleads Fraud Under New York State Law

Having satisfied Rule 9(b),  ACI must also demonstrate its proposed amendment is not futile by showing it can plead fraud in accordance with the underlying state law.[25]  The parties generally agree New York state law applies to ACI's fraud claim.[26]  Under New York law, "[t]o establish a prima facie case for fraud, [a plaintiff has] to prove that (1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss."[27]  ACI argues its Amended Complaint adequately alleges fraud under these elements because "each time [Conservice] used Speedpay," it agreed to representations in the Terms and Conditions that it knew to be false in order to initiate transactions through ACI's

---

[25] *See, e.g.*, *Xiotech Corp. v. Express Data Products Corp.*, 11 F. Supp. 3d 225, 239 (N.D.N.Y. 2014) (applying Rule 9(b) procedural standard and New York state law fraud standard to evaluate fraud claim).  ACI states that because the court's Memorandum Decision and Order granted Conservice's Motion to Dismiss the fraud claim on the basis of ACI's failure to plead fraud with particularity as required by 9(b), the court implicitly rejected Conservice's arguments concerning whether ACI adequately stated a claim for fraud under New York state law.  *See* Dkt. 41 (Reply in Support of Motion for Leave to File First Amended Complaint) (hereinafter Reply) at 2–3.  This is not the case: having found that the fraud claim was not pleaded with the requisite particularity, the court did not go on to consider whether the elements of fraud had been sufficiently pleaded under New York state law.  That threshold conclusion did not mean ACI did not also need to adequately state a claim for fraud under the appropriate state law standards.

[26] The parties primarily cite to New York law in discussing the elements of fraud.  *See* Opposition at 4–7; Reply at 2–4.  However, in its Reply, ACI also argues that Colorado law may apply because some prior versions of the Terms and Conditions required the application of Colorado law.  *See* Reply at 4–5.  ACI continues that, under either Colorado or New York law, its fraud claim as amended is not futile.  *See id.* at 5–6.  As discussed *infra* note 27, the court finds the elements of fraud are substantially similar under either state's law.  Therefore, the court does not engage in a detailed choice of law analysis at this stage of determining whether to grant the Motion to Amend.  However, the court reminds the parties to fully brief the choice of law issues in this case the next time the question arises.

[27] *Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 195 (N.Y. 2007) (internal citation and quotation omitted).  Under Colorado law, the elements are essentially the same: "Common law fraud has the following elements: one made a false representation of a material fact; the party knew such a representation was false; the party who the representation was made to did not know of its falsity, and the representation was made with an intent that it be acted upon, and results in damages."  *Shaw v. 17 West Mill St., LLC*, 307 P.3d 1046, 1050 n.5 (Colo. 2013) (internal citation and quotation omitted).

Speedpay service, and ACI relied on "each of these false representations in proceeding with the processing of the transaction, and ACI suffers damages as a result thereof."[28]

The court agrees with ACI that its proposed First Amended Complaint adequately alleges facts making out a prima facie case of fraud. First, ACI sufficiently pleads that Conservice represented a material fact and that the representation was false by alleging Conservice affirmatively checked a box indicating agreement with Terms and Conditions, which included the following representation:

> "You represent and warrant that: (i) You are a customer of Biller, (ii) that You are using the Services and/or submitting a Payment transaction on Your own behalf, or as an employee, owner or principal of the User-customer, and (iii) You are not using the Service or Website under a claim of agency or other third-party relationship on behalf of a User-customer, and (iv) that You are not using the Service or Website for profit, financial gain, or any commercial benefit."[29]

ACI alleges Conservice made this representation despite being a third-party billing service that used Speedpay for commercial benefit.[30] As such, ACI sufficiently alleges Conservice represented a material fact, and that the representation was false. Second, ACI sufficiently alleges Conservice intended to deceive ACI by alleging Conservice knew the representations were false but made them anyway to use Speedpay as part of its business model.[31] Finally, ACI sufficiently alleges it justifiably relied on Conservice's statement and was induced to engage in a certain course of conduct by alleging ACI processed transactions initiated by Conservice on the basis of Conservice's representations that it was an individual customer.[32] Finally, ACI

---

[28] Reply at 5–6.

[29] Dkt. 35-2 (Proposed First Amended Complaint) ¶ 10.

[30] Id. ¶¶ 10, 12–17, 26.

[31] Id. ¶¶ 26, 29. See also Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

[32] Dkt. 35-2 (Proposed First Amended Complaint) ¶¶ 11, 12, 29.

sufficiently alleges the loss it sustained by describing damages of at least $5 million from paying the high interchange fees generated by Conservice-initiated transactions.[33]

Because ACI adequately alleges facts making out a prima facie case for fraud, the court concludes leave to amend should be granted.

### III.    Amendment is Not Futile

Conservice argues granting leave for ACI to file the First Amended Complaint would nonetheless be futile because: (1) New York law prohibits bringing duplicative contract and fraud claims, (2) ACI does not adequately allege a claim for fraudulent inducement, and (3) because ACI has not alleged justifiable reliance.[34]  The court will address each of Conservice's arguments in turn.

#### A.  ACI's Breach of Contract and Fraud Claims are Not Duplicative

First, Conservice argues ACI's proposed amendment is futile because New York law requires a plaintiff to distinguish a fraud claim and breach of contract claim by alleging content extraneous or collateral to the contract,[35] and because "ACI fails to allege any extraneous or collateral representation that induced it to enter into the Terms and Conditions."[36]  Specifically, Conservice argues ACI's fraud claim is based on its allegation that Conservice misrepresented facts when it agreed to the Speedpay Terms and Conditions, and the claims are duplicative because the alleged fraud is based only on Conservice's alleged breach of the Terms and Conditions.[37]  In Reply, ACI argues that because "a false statement of intention is sufficient to

---

[33] *Id.* ¶¶ 16–18, 30.

[34] Opposition at 2 (summarizing argument).

[35] *Id.* at 4 (citing *Xiotech Corp.*, 11 F. Supp. 3d at 241).

[36] *Id.* at 5.

[37] *Id.*

support an action for fraud" under New York law, "even if that false statement relates to a contractual agreement," it has alleged a representation collateral or extraneous to the contract by alleging a false statement of intention.[38]

Under New York law, a claim for fraud "cannot be asserted simply because a party did not intend to honor its express contractual agreement."[39] In other words, if a party simply seeks to enforce its bargain under a contract, a separate tort claim will not lie.[40] However, "a false statement of intention is sufficient to support an action for fraud, even if that false statement relates to a contractual agreement."[41] Specifically, to maintain a fraud claim arising out of a breach of contract claim, a plaintiff must "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract" which induced the plaintiff to enter the contract.[42]

Applying these principles, a plaintiff could not maintain a fraud claim related to a breach of contract claim in New York when the alleged false statement at issue was the "exact statement that [plaintiff] claim[ed] created the contract."[43] Similarly, a fraud claim was barred where "the complaint [did] not state the specific promises or omissions of material facts allegedly made by the [defendant], it allege[d] nothing more than a breach of the contract and any covenants implied."[44]

---

[38] Reply at 2 (citing *Town of Haverstraw v. Columbia Elec. Corp.*, 237 F. Supp. 2d 452, 455 (S.D.N.Y. 2002)).

[39] *Town of Haverstraw*, 237 F. Supp. 2d at 455 (citing *First Bank of the Americas v. Motor Car Funding Inc.*, 257 A.D.2d 287, 291 (N.Y. App. Div. 1999)).

[40] *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 768 (N.Y. 1995).

[41] *Town of Haverstraw*, 237 F. Supp. 2d at 455 (citing *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 653 N.E.2d 1179, 1184 (N.Y. 1995)).

[42] *Bridgestone/Firestone, Inc., v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 20 (2d Cir. 1996) (citing *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 502 N.E.2d 1003 (N.Y. 1986)).

[43] *Town of Haverstraw*, 237 F. Supp. 2d at 456.

[44] *N.Y. Univ.*, 662 N.E.2d at 769.

However, fraud claims have been permitted in New York "where they are based on a misrepresentation that induced the other party to enter into the contract."[45]  Accordingly, a fraud claim stood apart from a breach of contract claim when the contract claim arose from a party's violation of geographic restrictions, while the fraud claim arose from one party inducing the other to enter the contract in the first place by misrepresenting their willingness to abide by the geographical restrictions.[46]  As the court put it, the fraud claim alleged "a representation of present fact . . . which was the inducement for the contract," rather than just "future intent" to not perform under the contract, and therefore was not duplicative of the breach of contract claim.[47]

ACI's amended claim for fraud more closely resembles those that have survived motions to dismiss in New York.  ACI alleges Conservice made a representation of present fact, not of future intent, when it checked the Speedpay Terms and Conditions and thereby represented it was an individual paying a utility bill.  ACI further alleges this misrepresentation caused ACI to process Conservice-initiated payments through Speedpay.[48]  In other words, ACI was induced to enter the contract formed by the Terms and Conditions by Conservice's alleged misrepresentation, and ACI then breached the Terms and Conditions by transmitting payments over Speedpay for commercial gain.[49]  Although these breach of contract and fraud claims are related, the court does not find ACI's claim for fraud so duplicative as to be barred under New

---

[45] *Town of Haverstraw*, 237 F. Supp. 2d at 456.

[46] *Deerfield*, 502 N.E.2d at 1004; *see also Emby Hosiery Corp. v. Tawil*, 196 A.D.3d 462, 464–65 (N.Y. App. Div. 2021) ("Although both [the fraud and breach of contract] causes of action are based on the same facts, the plaintiff's fraud cause of action alleges that the defendants induced the plaintiff to sell the defendants more product during the holiday season with a misrepresentation of a present fact collateral to the contract, i.e., that the defendants would pay the plaintiff all of the monies owed with respect to prior orders despite knowing that the corporate defendants' bank accounts did not have sufficient funds to cover those costs.").

[47] *Deerfield Commc'ns Corp.*, 502 N.E.2d at 1004.

[48] Dkt. 35-2 (Proposed First Amended Complaint) ¶¶ 26, 29; Reply at 5–6.

[49] *Id.* ¶¶ 22–24.

York law.  The claim for fraud in ACI's Proposed First Amended Complaint does not as closely resemble those cases where fraud claims were dismissed when plaintiffs alleged that defendants entered contracts with the intention to later renege on their obligations.  The court does not share Conservice's view that the proposed amendment is futile.

### B.  ACI Alleges Facts Supporting Inducement

Second, Conservice argues that to the extent ACI intends to plead fraudulent inducement, it fails to adequately allege any facts supporting inducement.[50]  Conservice argues "the notion that the website operator is induced to enter into a contract is inconsistent with how such contracts are formed"—namely, the clickwrap process in which the user assents to the contract by clicking "I agree."[51]  Conservice argues "the [proposed first amended] complaint is devoid of any facts suggesting that Conservice 'enticed or persuaded ACI to take a certain course of action' or that any 'benefit or advantage caused ACI to enter into a contract.'"[52]

Conservice cites no specific case law in support of its argument that a website operator could never be induced to enter a clickwrap contract it offers to users.[53]  In fact, Conservice's argument seems to misapprehend the fundamental nature of clickwrap contracts:

---

[50] Opposition at 6–7.  Conservice also argues that ACI relies on "inapposite" cases about fraudulent inducement as opposed to fraud, and that ACI has failed to "amend its allegations to be more consistent with inducement." Opposition at 6 n.3.  However, in New York, "[t]he elements of fraudulent inducement are substantially the same as those for common law fraud."  *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 297–98 (S.D.N.Y. 2011) (citing *Braddock v. Braddock*, 60 A.D.3d 84, 86 (N.Y. App. Div. 2009)).  Indeed, both fraud and fraudulent inducement claims have an inducement element in New York.  *Compare Perrotti v. Becker, Glynn, Melamed & Muffly LLP*, 82 A.D.3d 495, 498 (N.Y. App. Div. 2011) (a claim for fraudulent inducement requires "a false representation, made for the purpose of inducing another to act on it") *with Ross*, 868 N.E.2d at 195 (a claim for fraud requires showing that "plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct").  As discussed above, the court concludes ACI has adequately pleaded all elements of fraud, including inducement.  Accordingly, the court disagrees that ACI needs to plead fraudulent inducement as opposed to common law fraud for amendment to be non-futile.

[51] Opposition at 6–7 (citing *Resorb Networks, Inc. v. YouNow.com*, 51 Misc. 3d 975, 982 (N.Y. Sup. Ct. 2016)).

[52] *Id.* (citing *Inducement*, Black's Law Dictionary (11th ed. 2019)).

[53] *See* Opposition at 6–7 (citing *Resorb Networks*, 51 Misc. 3d at 982) (defining Browsewrap and Clickwrap generally).

> Clickwrap agreements necessitate an active role by the user of a website. . .
> Clickwrap agreements require a user to affirmatively click a box on the website
> acknowledging awareness of and agreement to the terms of service before he or
> she is allowed to proceed with further utilization of the website.[54]

In other words, even though the website sets the terms of the contract, it is the user who ultimately causes the contract to be formed by accepting its terms. Accordingly, the court finds ACI has adequately pleaded facts plausibly supporting the inducement element of common law fraud, because it pleads that it would not have processed the Speedpay transactions that Conservice initiated had Conservice not checked the box affirming that it was not using Speedpay for commercial gain.[55]

### C. ACI Has Alleged Justifiable Reliance

Finally, Conservice argues ACI's fraud claim fails because "it has not alleged justifiable reliance on any purported misrepresentation."[56] It contends "[t]he Notion that ACI could have justifiably relied on representations and warranties that it prepared for its own non-negotiable Terms and Conditions—which apply to a payment platform that ACI administers and monitors—defies logic. There appears to be no cases in any jurisdiction that would support reliance under these circumstances."[57] The court disagrees. As discussed above, clickwrap contracts are formed when a website user affirmatively assents to the terms and conditions set out by a website.[58] Although the website sets the terms of the clickwrap agreement and offers the contract, the user's statement of acceptance to the terms of conditions forms the contract. ACI alleges it generally relies on Speedpay users to represent that they are individual customers of

---

[54] *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015) (internal citations and quotations omitted).

[55] Dkt. 35-2 (Proposed First Amended Complaint) ¶ 29.

[56] Opposition at 7 (citing *Perrotti*, 82 A.D.3d at 498).

[57] *Id.*

[58] *Berkson*, 97 F. Supp. 3d at 397.

billers before running the Speedpay service, and that it relied on Conservice's representations that it was an individual user before running Speedpay.[59]  That is sufficient, at the pleading stage, to plausibly allege justifiable reliance.[60]  Accordingly, the court does not find amendment to be futile.

### CONCLUSION

For the reasons stated above, ACI's proposed amendment is not futile because the proposed Amended Complaint pleads fraud with the requisite particularity and adequately states a claim for common law fraud under New York state law.  Accordingly, ACI's Motion to Amend[61] is GRANTED.  Within seven (7) days of this Order, ACI may file the Proposed First Amended Complaint attached to its Motion to Amend.

SO ORDERED this 13th day of June, 2022.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[59] Dkt. 35-2 (Proposed First Amended Complaint) ¶ 29.

[60] *See also DDJ Mgmt., LLC v. Rhone Grp. L.L.C.*, 931 N.E.2d 87, 91–92 (N.Y. 2010) (justified reliance more often found when plaintiff relies on written statement that defendant agreed to) (collecting cases).

[61] Dkt. 35.